# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CASSANDRA LEWIS, | : | |
| Plaintiff, | : | |
| | | Case No. 3:08cv00079 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Plaintiff Cassandra Lewis suffers from certain health problems including, for example, back and shoulder pain, bipolar disorder, and polysubstance abuse in remission since December 2005, and right-eye blindness for most of her life. (Tr. 19, 23, 78, 83). Her health problems prevent her from performing her past jobs as an a cashier, a waitress, a stock clerk, and a banquet helper. *See* Tr. 30, 84.

On December 12, 2003, Plaintiff sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) claiming she had been under a disability since June 1, 2003. (Tr. 60-63, 677-79). After various administrative proceedings, Administrative Law Judge (ALJ) Thomas R. McNichols, II denied Plaintiff's DIB and SSI applications based on the conclusion that Plaintiff's health problems did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 15-32). The ALJ's nondisability

---
[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g) and 1383(c)(3), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #13), Plaintiff's Reply (Doc. #14), the administrative record, and the record as a whole.

Plaintiff seeks an Order remanding this matter to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II.    FACTUAL BACKGROUND

At the time of the ALJ's decision, Plaintiff's age (46 years old) placed her in the category of a "younger person" for purposes of resolving his DIB and SSI applications. *See* 20 C.F.R. §§404.1563(c), 416.963(c); s*ee also* Tr. 30. Plaintiff has at least a high school education. *See* Tr. 30, 133.

Plaintiff mainly challenges the ALJ's reliance on the opinions provided by the medical expert, clinical psychologist Dr. Buban, who testified during the ALJ's hearing. Dr. Buban reviewed Plaintiff's records and summarized the significant psychological medical findings. (Tr. 735-39). She noted that Plaintiff underwent and completed a substance abuse treatment program in December 2005 and has continued outpatient treatment since then. (Tr. 737). Dr. Buban explained that records beginning in February 2006 "do list the diagnosis of bipolar disorder one with psychotic features. Rule out for major depressive disorder recurrent. A GAF of 55."[2] (Tr. 737). That GAF assessment refers to "moderate symptoms ... or moderate difficulty in social, occupational, or school

---

[2] Health care professionals use the "GAF" (Global Assessment of Functioning) scale to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision (DSM-IV-TR) at pp. 32-34.

functioning...." DSM-IV-TR at p. 34.

During her testimony Dr. Buban addressed whether or not Plaintiff met the criteria set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. Generally speaking, the Listings are often significant in Social Security cases because a claimant who shows that her impairment meets or equals the criteria set forth in a Listing, then she is under a "disability" within the meaning of the Social Security Act. *Sullivan v. Zebley*, 493 U.S. 521, 531-32 (1990); *McClanahan v. Commissioner of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

Dr. Buban testified that before Plaintiff completed the substance abuse treatment in December 2005, she had "diagnoses of 12.09 [substance addiction disorders] and 12.04 [affective disorders]...." (Tr. 738). Dr. Buban explained, "I think the record is replete prior to that time with evidence that she struggled significantly with substance use and abuse. And that with the treatment, she had done well. I do not see anything in the current treatment to indicate that she has used substances." (Tr. 738-39). Dr. Buban opined that substance abuse was not an issue for Plaintiff at the time of the administrative hearing. *Id.* According to Dr. Buban, mild to moderate depression was a current issue at the time of the administrative hearing. (Tr. 739).

Dr. Buban next testified that Plaintiff met the criteria for substance addiction disorder during a closed period: from her disability onset date of June 1, 2003 to about December 1, 2005, when Plaintiff completed her substance abuse treatment program. (Tr. 740-41). She later noted that Plaintiff met Listing for substance addition disorders (12.09) in conjunction with the listing for affective disorders (12.04) during that limited period of time. (Tr. 740).

When the ALJ next asked if she had further thoughts about whether Plaintiff met or equaled the Listings, Dr. Buban testified:

> No, sir. You know, as I indicated in the record when I look at the treatment notes since January 2006, it really looks like mild to moderate depression. There's periods of time when she says she's okay. And then

3

she may get more anxious or agitated. And they just [sic: presumably, 'adjust'] the medications. There's no hospitalizations, no crisis intervention. Looks to be pretty standard outpatient care. In terms of current complaints about memory and concentration, there's insufficient evidence of record in order to evaluate those.

(Tr. 740).

Plaintiff's counsel questioned Dr. Buban about Exhibit 53 in the administrative record, which consists of Plaintiff's treatment notes during 2006 from Advanced Therapeutic Services and a questionnaire completed by Plaintiff's treating therapist, Audrey Violand, and Plaintiff's treating psychiatrist, Dr. Singh. (Tr. 649-69). Plaintiff's counsel asked Dr. Buban the following question about a questionnaire completed by therapist Violand and Dr. Singh's questionnaire, referred to by counsel as "reports":

> Okay. Now getting back to those reports, if you were to take those reports as true, and I'm speaking of the ones co-signed by Dr. Singh and the therapist, if you were to take those things as true, and if you were, and again, this is a hypothetical, remind you [sic]. If you were to assume that the substance abuse was in remission at that time, would it be fair to say that the claimant met listing 12. 04 from at least 12/21/05 forward?

(Tr. 743-44). Dr. Buban answered, "if I were only to consider that form, the answer would be yes." (Tr. 744).

Upon reexamination by the ALJ, Dr. Buban testified that Plaintiff met the requirements of Listing 12.09 combined with 12.04 only during the closed period from June 1, 2003 until about December 2005. (Tr. 745). Dr. Buban further stated that Plaintiff did not meet the severity level for meeting or equaling the Listings at the time of the administrative hearing (January 4, 2007). *Id*.

During further examination, Plaintiff's counsel asked Dr. Buban about part of the criteria set forth in Listing 12.05C – specifically, a "[m]edically documented history of a chronic affective disorder..., with symptoms or signs currently attenuated by medication or psychosocial support...." Dr. Buban acknowledged that Plaintiff's symptoms or signs were attenuated by medication or psychosocial support, "I mean she's improved." (Tr.

4

747). But Dr. Buban further testified that if Plaintiff had to discontinue her treatment to return to work, then it was not clear to Dr. Buban that Plaintiff's symptoms or signs would interfere with her ability to sustain work activity. (Tr. 747).

## III. ADMINISTRATIVE REVIEW

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70. A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see also Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 23-31; *see also* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).[3] Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

---

[3] The remaining citations will identify the pertinent SSI Regulations with full knowledge of the corresponding DIB Regulations. Plaintiff meets the insured-status requirement for DIB eligibility through December 2008. *See Colvin*, 475 F.3d at 730; *see also* Tr. 36.

> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

In the present case the ALJ found at Step 1 that Plaintiff had not engaged in any substantial gainful activity since his claimed disability onset date. (Tr.19).

At Step 2 the ALJ determined that Plaintiff had the severe impairments of "intermittent back, leg, and shoulder pain; bipolar disorder (depression); and polysubstance abuse and dependence, in reported remission since December 2005." (Tr. 19).

The ALJ determined at Step 3 that Plaintiff concluded as follows:

> The severity of Plaintiff's impairments, including substance abuse disorder(s), meet sections 12.04 and 12.09 of ... the so-called 'Listings of Impairments,' from June 1, 2003, to December 1, 2005.... As of December 2, 2005, the claimant does not have an impairment or combination of impairments described in the Listing of Impairments.

(Tr. 24). This finding, however, did not result in an award of benefits, because the Social Security Administration is statutorily precluded from granting DIB or SSI to individuals when drug or alcohol abuse is material to a disability determination. *See* Tr. 25. The ALJ found at Step 3 that substance abuse was a factor material to the determination of disability during the closed period (June 1, 2003 to December 1, 2005). *Id.* And the ALJ therefore concluded that Plaintiff was not entitled to benefits during the closed period. *Id*.

At Step 4 the ALJ found that beginning on December 1, 2005, Plaintiff had the

Residual Functional Capacity to perform a limited range of light work.[4] (Tr. 26). The ALJ further concluded at Step 4 that Plaintiff could not perform her past relevant work as a cashier, a waitress, a stock clerk, or banquet helper. (Tr. 30).

The ALJ's assessment of Plaintiff's Residual Functional Capacity, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and hence not eligible for DIB or SSI. (Tr. 19-32).

## IV.  JUDICIAL REVIEW

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Commissioner of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F.3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "more than a scintilla of evidence but less than a preponderance...." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Judicial review for substantial evidence is deferential not *de novo*. *See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record – if other substantial evidence supports the ALJ's findings. *Rogers*, 486 F.3d at 241; *see Her v. Commissioner of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Reviewing for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ did

---

[4] Under the Regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

not, the decision may not be upheld even when substantial evidence supports the ALJ's findings. *See id.* For example, a decision will not be upheld where the ALJ failed to apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein). Through *Bowen* and other Sixth Circuit cases, an ALJ's failure to apply the correct legal criteria – at least when evaluating medical source opinions – mandates further judicial review for harmless error. *Bass II v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007); *see Bowen*, 478 F.3d at 747-49; *see also Wilson*, 378 F.3d at 547-49 (offering examples of possible *de minimis* errors). Consequently, if the ALJ erred by not applying the correct legal criteria but the error was harmless, the decision should be affirmed. *See Bass II*, 499 F.3d at 512 (and cases cited therein).

## V. DISCUSSION

### A. The Parties' Contentions

Plaintiff contends that the ALJ's findings regarding Plaintiff's mental/emotional impairments are not supported by substantial evidence. Plaintiff reasons that although the ALJ relied on Dr. Buban's opinions, her opinions were equivocal and, consequently, could not rise to the level of evidence that a reasonable mind could accept.

Plaintiff also contends that the ALJ applied an incorrect legal standard when rejecting the opinions of her treating psychiatrist, Dr. Singh, and her treating therapist, Ms. Violand, and when instead accepting Dr. Buban's opinions.

The Commissioner contends that Dr. Buban's testimony was clear and constituted substantial evidence supporting the ALJ's decision. The Commissioner further contends that the ALJ reasonably rejected the co-signed opinions of Dr. Singh and Ms. Violand.

### B. Medical Source Opinions

The Social Security Regulations require ALJs to evaluate every medical opinion of record regardless of its source. *See* 20 C.F.R. §416.927(d). The required evaluation first focuses on treating physicians or psychologists, whose opinions are entitled to controlling weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record. 20 C.F.R. §416.927(d)(2); *see Wilson*, 378 F.3d at 544. When these requirements are not met, the treating physician rule does not apply. *Id*.

If the ALJ concludes that a particular treating source's opinion is not entitled to controlling weight under the treating physician rule, the ALJ must continue to evaluate that treating source's opinion by considering the following additional factors:

1. The length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship;

2. The 'supportability' of the opinion – whether it is supported with relevant evidence and whether it is well explained;

3. The consistency of the opinion with the record as a whole;

4. The specialization, if any, of the treating source; and

5. 'Other factors' brought to the ALJ's attention, including, for example, the treating source's knowledge of the SSI or DIB programs and its evidentiary requirements.

20 C.F.R. §416.927(d)(2)-(6); *see Wilson*, 378 F.3d at 544. In order to comply with the Regulations, "a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 *Id*. (citing Social Security Ruling 96-2p, 1996 WL 374188 at *5 (1996)).

As to non-treating medical sources – such as one-time examiners or medical

9

experts who testify during the administrative hearing – ALJs must evaluate their opinions under the same factors applicable to treating medical sources – supportability, consistency, specialization, *etc*. *See* 20 C.F.R. §416.927(d), (f).

    **C.**    <u>**Analysis**</u>

The ALJ correctly set forth the legal criteria applicable under the treating physician rule and applied that criteria as the basis for declining to apply controlling weight on the opinions of Plaintiff's treating psychiatrist Dr. Singh and his treating therapist Ms. Violand. *See* Tr. 27-28. Thus, to the extent the ALJ's decision applied the correct legal criteria to reject these medical source opinions, the ALJ did not err as a matter of law. *See* 20 C.F.R §416.927(d)(2).

However, the ALJ also applied this same legal criteria – specifically finding that the opinions of Dr. Singh and Ms. Violand were not well supported by medically acceptable clinical and laboratory diagnostic technique and their opinions were inconsistent with other substantial evidence of record – as the basis for not placing "even great" weight on these opinions. (Tr. 27-28). In doing so, the ALJ erred as a matter of law by omitting from his analysis a discussion or consideration of whether the any weight was due these medical source opinions under any of the remaining factors of the Regulations. *See Wilson*, 378 F.3d at 544. The ALJ did not specifically refer to any of these factors or to the Regulations, 20 C.F.R. §404.1527(d)(3)-(5), when weighing Dr. Singh's opinion. Social Security Ruling 96-2p instructs:

> Adjudicators must remember that a finding that a treating source's medical opinion is not well-supported by medically acceptable clinical and laboratory techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

10

Ruling 96-2p, 1996 WL 374188 at *4. Because the ALJ did not heed this instruction or the requirement of the Regulations, he erred as a matter of law when evaluating the opinions of Dr. Singh and Ms. Violand. Indeed, the ALJ overlooked that under the Regulations, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of the treating physician is entitled to great deference, its non-controlling status, notwithstanding." *Rogers*, 486 F.3d at 242 (citing Ruling 96-2p, 1996 WL 374188 at *4).

In addition, the ALJ erred by not applying any of the regulatory factors to the opinions of Dr. Buban. Social Security Regulations require ALJs to evaluate every medical opinion of record regardless of its source. *See* 20 C.F.R. §416.927(d). As to non-treating medical sources – such as medical experts, like Dr. Buban, who testify during the administrative hearing – the ALJ must evaluate their medical opinions under the same factors applicable to treating medical sources – supportability, consistency, specialization, *etc*. *See* 20 C.F.R. §416.927(d), (f). The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §416.927(d) ("we consider all of the following factors in deciding the weight to give any medical opinion..."); *see* also 20 C.F.R. §416.927(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §416.927(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).

There remains the possibility that the ALJ's errors were harmless. *See Bowen*, 478 F.3d at 747-49. A review of the opinions provided by Dr. Singh and treating therapist Violand reveals that they provided some supporting explanations for their opinions in light of certain signs or symptoms they observed during their treatment of Plaintiff. *See* Tr. 649-69. As a result, their opinions were not "so patently deficient that the Commissioner could not possibly credit it...." *Wilson*, 378 F.3d at 547. And, consequently, the ALJ's failure to evaluate their opinions under the legal criteria set by the Regulations was not harmless error. *See id*.

Accordingly, Plaintiff's challenges to the legal criteria applied by the ALJ in his

evaluation of certain medical source opinions are well taken.[5]

## VI. REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

Plaintiff acknowledges that a judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming. (Doc. #10 at 5). In addition, the evidence of a disability is not strong while contrary evidence is weak. *See* Doc. #13 at 2-11 (and citations therein).

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above. On remand, the ALJ should be directed to (1) evaluate the medical source opinions under the legal criteria required by the Regulations, Rulings, and case law; (2) determine anew, through the sequential evaluation procedure, whether Plaintiff was under a disability and thus eligible for SSI and/or DIB.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

---

[5] Because of this conclusion, and the resulting need to remand this case for further administrative proceedings, an in-depth analysis of Plaintiff's remaining challenges to the ALJ's decision is unwarranted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final non-disability determination be vacated;

2. No finding be made as to whether Plaintiff Cassandra Lewis was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


February 24, 2009                                    s/ Sharon L. Ovington
                                                                       Sharon L. Ovington
                                                    United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).